[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15503
In this matter the plaintiff Roberta Yegidis claims money damages from the defendant Stop Shop Companies, Inc. resulting from a fall which occurred on the defendants premises on July 11, 1997.
It is the plaintiff's claim that at about 7 p.m. she and her husband had finished their grocery shopping and were in the checkout line at one of the defendant's registers. They had been in line for a period of time estimated by the plaintiff approximately 15 minutes. Her husband was with her and his estimate of the time in line was 15-20 minutes. Mrs. Yegidis at that point decided to buy a lottery ticket at the nearby courtesy desk and left her husband in line with the grocery cart. She walked by the entrance to the adjacent checkout aisle which was closed and upon turning to her left to proceed to the courtesy desk she slipped and fell. She then became aware that this area of the floor had what appeared to be smashed grapes as well as candies on the floor which she believes she knocked off the shelves when she tried to check her fall. She landed on her left side and immediately experienced pain and discomfort in her left hand, left arm and foot on her left side. Her husband testified that he saw her fall and went to assist her. He saw the grapes on the floor as well as crushed grapes on her shoe. He thought the number of grapes was 3 or 4 whole grapes in addition to some smashed on her shoe and on the floor. At this point, one Jennifer Brandt, an employee of the defendant who was in the immediate area, saw the plaintiff on the floor and went to assist. She testified that the plaintiff told her she had slipped on grapes and Ms. Brandt observed "smushed" grapes where she fell. After helping up the plaintiff she obtained paper towels and wiped up the floor. In response to questions put to her by plaintiff's counsel, she testified that the area where the plaintiff fell was normally tended to by the store porter but she was not sure a porter was on duty at the time of the fall. Plaintiff's Ex. 1 "Report of Incident or Injury" notes on line 27 that a porter is responsible for maintaining the area where the plaintiff fell and on line 28 cleaning is done "as needed" but the "time last cleaned", line 29, is marked by a slash, suggesting that the time "last cleaned" was unknown. Both the plaintiff and her husband testified that for the 15-20 minutes they were standing in line before the plaintiff left to make her way to the courtesy counter, neither of them saw anyone, customer or store personnel, in the area where the plaintiff slipped and fell.
In order for the defendant to be charged with negligence in the upkeep of its premises which allegedly caused the plaintiff's fall and resulting injuries, the law requires that such a defendant have notice, actual or constructive, of the claimed defect or condition and a reasonable opportunity to remedy the same in order to prevent injury to a person CT Page 15504 lawfully in use of the premises. Here, the plaintiff undisputedly was a business invitee who was entitled to have the premises maintained in a reasonably safe condition. There is no evidence to suggest that the defendant had actual notice of the defect, the grapes on the floor, where patrons were expected to travel so the question of the defendants responsibility must rest on constructive notice, or whether the grapes were on the floor for a sufficient time that the defendant through its agents in the exercise of reasonable care should have had notice and failed nonetheless to take reasonable care to remedy the condition. The court concludes from the testimony of the plaintiff and her husband as well as by reference to Plaintiff's Exhibit 1 that no one passed through the area where the plaintiff fell for a period of approximately 15-20 minutes prior to her fall. The court concludes that the grapes on the floor as testified to by the defendants employee had been there undetected by store personnel for at least this time period prior to the plaintiff's fall. For a large grocery store with a number of patrons and in an area where customers could reasonably be expected to be, i.e. at the checkout lane and customer service area, reasonable care would require more frequent inspection than a period in excess of 15 minutes.
Following her fall, the plaintiff was taken to Milford Hospital Emergency Room, where she complained of and was treated for left side pain in the shoulder and neck, left side left hip knee, leg and great toe. She then received treatment from Dr. Gerald Cambria and somewhat later from Dr. Patrick Mastroianni for complaints of neck discomfort. At the time of trial, her principal complaints centered around discomfort and persistent periodic numbness of her elbow down to and into her left hand as well as a loss of strength in the hand, complaints that she had not experienced prior to this occurrence. Dr. Scott Wolfe who examined the plaintiff on several occasions concluded that she had a 3-5% permanent partial impairment of her right hand. While he was unable to attribute the origin of her complaints to her fall, (Plaintiff's Ex. 9 — report of September 14, 2000), his later report of October 11, 2000 opined that her underlying condition and continued symptoms although not initially caused by the fall were aggravated by the injuries sustained in her fall. In addition to her physical complaints, she testified that she has had to curtail or eliminate certain activities because of the injuries she sustained and the fall has had an adverse effect upon her lifestyle. Plaintiff's Ex. 2 — Life Expectancy Table indicates the plaintiff has a life expectancy of 22.7 years.
Plaintiff's Exhibit 3 lists the claimed economic damages consisting solely of medical expenses and totals $5,395 approximately. While she was employed, there is no claim of loss of income or earning capacity although while she later experienced a period where she didn't work, she testified that she applied for and received unemployment compensation so CT Page 15505 presumably the claimed injury did not result in any loss of income attributable to the fall.
The court concludes from the evidence before it that the plaintiff is entitled to the following compensation for the injuries sustained as a result of the defendants negligence:
 Economic Damages: $ 5,395 Non-Economic Damages: 14,000
TOTAL DAMAGES: $19,395
Judgment may enter accordingly.
George W. Ripley, II Judge Trial Referee